

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4288
Re: Questions concerning the construc-
tion of Article 7342, Vernon's
Civil Statutes of Texas; as amend-
ed by House Bill 193, Acts, 47th
Leg., Regular Session, and Article
7345-b of Vernon's Civil Statutes
of Texas.

Your request for an opinion from this department has
been received and considered. The questions submitted by you are:

"In connection with the provision of the above
Act which reads, 'If the State bids the land in at
such sale, the Comptroller shall allow the Collector
the amount of such publisher's fee to be paid by the
Collector to the publisher,' the following questions
arise:

"(1) Under such provision, is the County Tax
Assessor-Collector authorized to pay the cost of pub-
lishing citations by publication in a suit for the
collection of State and county taxes where the prop-
erty is sold to the State?

"(2) Are such costs of publication to be paid
entirely from the State's part of the taxes in such
suit, or are the county and other taxing units which
are parties to such suit required to contribute their
prorata share of such publication fee?

"(3) If your answer to question No. 2 is that
the costs of publication are to be paid entirely out
of State taxes, is such statute constitutional?

Honorable George H. Sheppard, Page 2

"Citations by publication in suits for the collection of delinquent taxes have heretofore been governed by the provisions of Section 3 of Article 7345b, Vernon's Annotated Civil Statutes. A comparison of the last mentioned Article with the provisions of Article 7342, supra, will disclose numerous inconsistencies in the requirements of the two statutes, both as to the contents of the citation by publication and the number of times which such citation is required to be published. It will also be noted that under the provisions of House Bill 193, Section 1, in amending Article 29a, it is provided that citations by publication under any general or special law shall be published as required by such general or special law. In the light of the conflicting provisions of House Bill 193 itself and the further conflicts between such bill and Section 3 of Article 7345b, the following questions are submitted:

"(4) Are the contents of a citation by publication in a delinquent tax suit for State and county taxes required to contain the provisions enumerated in Article 7345b, or the provisions in Article 7342, or both?

"(5) Which of the statutes referred to in question 4 govern the number of publications which must be made of such citation by publication?

"Citations by publication under Article 7345b ordinarily contain approximately 300 words, whereas, a citation by publication which conforms to the requirements of both Article 7345b and Article 7342 will ordinarily contain approximately 500 words, and the fee for publishing such citation at the rate provided by Article 7342 would therefore be approximately $20.00. In many instances, however, where considerable property is involved in a single suit, the citation will be much longer and the costs proportionately higher.

"Will you, therefore, kindly advise me upon the following question:

"(6) Is the county tax collector authorized to pay the costs of publishing a citation by publication in

Honorable George H. Sheppard, Page 3

cases where the delinquent taxes assessed against
the property do not equal or exceed the publisher's
fee as set out in Article 7342?"

We find it desirable in answering your questions to first
determine the status and effect of Article 7342 of Vernon's Civil
Statutes of Texas, as amended, and purportedly re-enacted in House
Bill 193, Acts 47th Legislature, Regular Session. To do this we
must inquire into the status of said statute prior to the time it
was amended by said House Bill 193.

Article 7342 was first enacted in 1897. Said statute
provided for a method of issuing citations where the owners of prop-
erty are unknown or are non-residents of the state, the form there-
of, the number of times such citation was to be published, if pub-
lished in a newspaper, provided for publication in a newspaper of
an adjoining county when no newspaper was published in the county
where the suit was pending, provided a method of posting notices if
the publication could not be had in a newspaper, prescribed a maxi-
mum fee to be charged for publishing such citation, prescribed
certain proper recitals in the petition in such cases, provided that
such suits, after such publication, should be proceeded with as in
other cases and that the state and county shall have judgment for
the amount of taxes due and have a decree ordering such property to
be sold as in ordinary tax suits where the owner has been personally
served with process and provided for credits as shown by the re-
ceipt of the property owner or as otherwise evidenced by positive
proof showing the payment of the taxes sued for.

Under the provisions of said Article 7342, prior to its
amendment by House Bill 193, it was clearly the law that to have a
citation issue for "unknown heirs" as owners of property in a tax
suit, it was necessary to issue the same under the provisions of
Article 2040, R. C. S. of Texas, 1925. We quote from State vs.
Bagby's Estate (Civ. App.) 126 S. W. 687, as follows:

"Heirs of a deceased person whose muniment of
title is of record are not unknown owners of real
estate, but are known owners, even though the names
of such owners are unknown. Therefore, the provisions
of Article 7342, supra, are not applicable in obtain-
ing issuance and service of notice by publication upon
unknown heirs as owners of property in tax suits.
Williams vs. Young, 41 Tex. Civ. App. 212, 90 S. W. 940,
writ refused; State Mortgage Corporation vs. Affleck,
Tex. Com. App. 51 S. W. (2d) 274, 275, and decisions

there cited; Underwood vs. Bigman, Tex. Com. App. 32 S. W. (2d) 1102."

This peculiar condition of the law resulted even after the original enactment of Article 7345-b, Vernon's Civil Statutes of Texas, being Senate Bill 477, Acts 45th Legislature, Regular Session, page 1494-a. This is shown from a further quotation from State vs. Bagby's Estate, supra, which says:

"Neither Article 7342, nor 7345-b, supra, provides in express language for the issuance of service of notice by publication upon unknown heirs who may be the owners of realty in tax suits. There is no other statute under Chapter 10, supra, that expressly provides for the issuance and service of citation or of notice of publication upon unknown heirs as owners of realty."

The Forty-fifth Legislature, Regular Session, enacted Senate Bill 477 (which is shown as Article 7345-b, Vernon's Civil Statutes of Texas) which is a comprehensive act and apparently intended to be a rather complete and workable act on the procedure to be followed in tax suits brought for the collection of delinquent taxes by the various taxing units. Section 3, dealing with process, of said Senate Bill 477 was amended by said House Bill 565, Acts 46th Legislature, 1939, Regular Session. From the history of the amendatory act, and the date of the Bagby decision, it was evidently calculated to meet the holding in State vs. Bagby's Estate, supra, and neither Article 7342 nor 7345-b provided for citation to issue in tax suits to unknown heirs who might be owners of property. The amendment enlarged the scope of Section 3 so as to include the "unknown heirs" who might be the owners of realty and subject to a delinquent tax suit thus showing the intention of the Legislature to make Article 7345-b as nearly complete an Act as possible. The pertinent provisions of said Article 7345-b, insofar as the scope of this opinion is concerned, are Sections 3, 4, 6, 8, 9 and 13, which will not be copied herein for the sake of brevity.

From a careful consideration of the provisions of Article 7345-b, supra, it becomes apparent on its face that it embodies the same subject matter, and has the same object and purpose as that of Article 7342, supra, prior to its amendment by House Bill 193, supra. We think there is no doubt but what their provisions are in conflict and that they cannot be reconciled.

Honorable George H. Sheppard, Page 5

The Legislative intent with reference to whether a repeal is express or implied is always controlling. Texas Employers' Insurance Association vs. Morgan, Com. App. 295 S. W. 588. We think it can be said that the Legislative intention to expressly repeal any existing law, including Article 7342, supra, that might be in conflict with the provisions of said Article 7345-b, supra, is plainly manifest by the terms of Section 13 thereof. However, if such Act did not expressly repeal Article 7342, supra, then it is our opinion that said Article 7345-b, supra, repealed by implication the provisions of said Article 7342 prior to its amendment by the 47th Legislature. The applicable rule, supported by numerous authorities, is stated in 39 Tex. Jur. p. 145 where it is said:

"* * * Where two statutes are in pari materia and it is impossible to reconcile them, the older statute will be held to be repealed by implication to the extent of the conflict. In such circumstances it is presumed that the Legislature intended to repeal all laws or parts of laws clearly inconsistent with its later act."

This department considered the provisions of said Article 7342 and the provisions of Article 7345-b, prior to the amendment of Section 3 thereof by House Bill 565, supra, and in opinion No. 0-3362 this department said:

"It is clear from the authorities cited above that the provisions of Article 7345-b, supra, will prevail over the provisions of Article 7342, supra, should they be in conflict."

We desire to observe another rule of law which we think is applicable to the matter we are discussing. We quote from Meek vs. Wheeler County, 125 S. W. (2d) 331 (affirmed 144 S. W. (2d) 885), where the court said:

"In the case of Bryan vs. Sundberg, 5 Tex. 418, 424, the Supreme Court of this State announced the rule which, we think, is decisive of the issue before us. Such rule is in the following language: 'It undoubtedly is true that a construction which repeals former statutes, by implication, is not to be favored; and it is also true that statutes in pari materia, and relating to the same subject, are to be taken and construed together; because it is to be inferred that

they had one object in view, and were intended to
be considered as constituting one entire, and har-
monious system.  But when the new statute, in itself,
comprehends the entire subject, and creates a new,
entire, and independent system, respecting that
subject matter, it is universally held to repeal and
supersede all previous systems and laws respecting
the same subject matter.'"  (Underscoring ours)

The rule just announced is, we think, applicable to the effect
which the enactment of Article 7345-b, supra, had upon the provi-
sions of Article 7342, supra.

We next consider whether or not said Article 7342, supra,
was amended by the provisions of said House Bill 193, supra.

There is a conflict of authority relative to the author-
ity of the Legislature to amend a statute that had originally been
repealed.  We quote from Lewis Sutherland Statutory Construction,
Vol. 1, Second Edition, page 435, Section 233, where it is said:

"There is a conflict of authority as to whether
a section which has been repealed can be amended.
* * * Most of the older and some of the more recent
cases hold that such amendatory act, or amendment
of a repealed section, is a nullity.  A repeal by
implication is said to stand upon the same footing
in this respect as a direct or express repeal. * * *"

In the footnote under the above quotation is cited the case of
Robertson vs. State, 12 Tex. Civ. App. 541.  The pertinent part
of the case reads:

"The act of the 24th of July, 1879, was only
amendatory of the act of June 24, 1876, and when the
amendment took effect, the act amended was no longer
a law because it had become repealed by the act
adopting the codes above quoted; and hence the amenda-
tory act had nothing to support it.  A repealed law
is not the subject of amendment. * * * It being a
part of the repealed act, it cannot exist without it,
but must pass away with it. * * * "  (Underscoring
ours)

A consideration of the above facts and authorities brings us to the inevitable conclusion that the Legislature did not have authority to amend Article 7342, as it attempted to do by the re-enactment of it in said House Bill 193, supra, for the reason that the statute had already been repealed either expressly or by implication by the enactment of said Article 7345-b, supra.

Did the 47th Legislature intend to re-enact said Article 7342, as an independent and new statute, in its changed form, by its action in passing House Bill 193? Was such statute re-enacted into a valid law? We think that both of these questions must be answered in the negative and will discuss some of the reasons for our conclusions.

House Bill 193, supra, when its caption, body and emergency clause are considered together, was clearly intended to require, in most, if not all instances, that the kinds of publications defined and enumerated therein, should be required to be published in some newspaper, which term was also defined, describing the number of times such publication should be run in the absence of existing statutory amendments and fixing a maximum legal rate to be charged for such publications and then the act proceeds to amend some few specific notice and process statutes to conform, at least, to the new legal rate fixed by House Bill 193. Insofar as Article 7342 is concerned, the caption of said Act provides:

"AN ACT * * * and amending * * * Article 7342 of Chapter 10, Title 122 of the Revised Civil Statutes of Texas of 1925, with respect to the legal rate of publication so as to conform with Articles 29 and 29a as amended herein, and re-enacting such statutes as amended. * * * *" (Underscoring ours)

Section 5 of said House Bill 193 and its preliminary provision prior to recopying Article 7342, in its amended form, says:

"Article 7342 of Chapter 10, Title 122 of the Revised Civil Statutes of Texas of 1925, shall be and the same is hereby amended so as to conform with the other provisions of this Act by re-enacting the same as amended as follows:" (Underscoring ours)

We think the word "re-enacting" as used, both in the caption and in the provision just quoted from Section 5, was merely meant to mean

that the statutes were to thereafter, as amended, read as they were recopied in the Act and that the Legislature did not intend to pass an original, new, separate and independent statute (Article 7342) by its action in passing House Bill 193. Article 7342, as found in House Bill 193, is not simply a statute relating to the publication of citations and setting a rate to be charged in such cases. It goes farther and describes certain specific statutory procedure to be followed in tax suits themselves coming within its particular provision and lays down certain rights and remedies. Thus it is clear that the body of the statute goes much farther than the real object evidently sought to be attained by the Legislature, by attempting to amend the statute, which was to provide for a legal rate to be charged by newspapers for making a publication of citation therein provided for so that the rate would be in conformity with the provisions of Article 29 and 29a, as amended by the Act. The Legislative intention to only change said Article 7342, supra, by amendment, so that it would conform to said Articles 29 and 29a, as amended by House Bill 193, is strengthened by the fact that the sentence in said statute, relating to charges and the number of times the citation therein provided for is to be published, is the only sentence of the original statute that was changed. There was, however, a new sentence added providing for payment by the Comptroller and Collector to the newspaper publishing such citation for the legal rate for making such publication, which is contrary to the existing method of payment, as is hereinafter shown in this opinion. The other statutes, specifically sought to be amended by House Bill 193, show that the only change made by their amendment was to change one sentence relating to the legal rate chargeable by newspapers for making the publication provided for in each of said statutes so that the rate would be in conformity with the legal rate established in said House Bill 193.

There is no more fundamental rule of statutory construction than that expressed in Popham vs. Patterson, (S. Ct.) 51 S. W. (2d) 680, where it is said:

"In determining the Legislative intent, the court should not look alone to any one phrase, clause, or sentence of the act, but the entire act; and this includes the caption, the body of the act and the emergency clause. * * *"

From a consideration of the wording of the caption of said House Bill 193, the provisions of the act itself, including its object and purpose, together with the emergency clause, we are compelled to say that since Article 7342 was repealed, either expressly or by implication, by Article 7345-b, supra, there was no valid and existing statute to support an amendment thereof, as was attempted in Section 5 of said House Bill 193, and further, that said statute was not re-enacted, by said act, as a new and independent statute and that it has no force and effect.

The evident legislative purpose and intention, by enacting House Bill 193, supra, which we have already discussed, is not thwarted nor affected by our reasoning and holding. In Section 1 of said House Bill 193 relating to Article 29, we find this provision:

"Without intending to exclude any other publication to which this act applies, it is especially provided that this act shall apply to all citations or notices which are required to be published or may be published in delinquent tax suits and to notices of sale of real estate under execution, order of sale, or other judicial sale provided for in Articles 3808, 4203, 7276 and 7342 of the Revised Civil Statutes of Texas, 1925." (Underscoring ours)

Again, under Section 5 of said Act, relating to Article 29a it is provided:

"In every case where the service of any citation or notice in any case, controversy, suit, or proceeding in any of the courts of the state is required to be by publication under the provisions of any general or special law of this state, such publication shall be published as required by the general or special law providing for such notice by publication."

In the case of State vs. Bagby's Estate, supra, this rule is expressed:

"The provisions of Chapter 10, Title 122 (taxation) of R. C. S. where applicable will control the procedure question in tax foreclosure suits here presented. 40 Tex. Jur. p. 241; Young vs. Jackson,

50 Tex. Civ. App. 351, 110 S. W. 74, writ refused;
Rousset vs. Settegast, Tex. Civ. App. 210 S. W. 219;
* * * ."

It is therefore apparent that the courts of this state have never
considered that Articles 28-a, 29 or 29-a of Vernon's Civil Stat-
utes, prior to their amendment by House Bill 193, supra, were ap-
plicable to proceedings in tax suits. That being the status of
the law, it follows, that said Articles 28-a, 29 and 29-a, of
Vernon's Civil Statutes, prior to their amendment by said House
Bill 193, had never been repealed by implication by the action of
the Legislature in enacting Article 7345-b, supra, in 1937, and
especially in view of the provisions of Section 13 of said statute.
Said Articles 28-a, 29 and 29-a, supra, were, then, proper subjects
of an amendatory act where amended in said House Bill 193. By
their amendment in said House Bill 193, we think it is evident
from the language used in that act that the Legislature intended
for the said amended statutes to apply, insofar as applicable, to
the rate to be charged by newspapers for making publications of
notices and citations required in tax suits. A different legal
rate for making publications of citations in tax suits is express-
ed in Article 7345-b than the rate allowed to be charged in said
Article 29, as amended by House Bill 193. The provisions with
reference to the legal rate chargeable for the publication of
citations in tax suits are in conflict and cannot be reconciled.
Since House Bill 193, amending said Article 29 is the latest ex-
pression on the same subject by the Legislature, we think it re-
pealed by implication Article 7345-b insofar as the legal rate
chargeable by newspapers for making citations by publication is
concerned. 39 Tex. Jur. 145. For the same reason we think that
the provision quoted from Article 29a, supra, makes it clear that
the specific provisions of Article 7345b, supra, specifying the
number of times the notices or citations therein provided for shall
be published, are controlling and should be followed.

Since we have arrived at the conclusions expressed above
it is unnecessary to answer the first three questions submitted
by you in your request.

For the reasons hereinabove expressed, you are advised,
in answer to your fourth question, that the provisions of Article
7345-b should be followed.

In answer to your fifth question we have already said
that the provisions of Article 7345-b are controlling over Article
7342 with reference to the number of publications to be made of
citations by publication in said tax suits.

In answer to your sixth question we have already, in this opinion, held that Article 7342 how has no force and effect as a law. In addition to what we have said, we think that there is another reason why the specific provision in said Article 7342, as it was attempted to be amended by House Bill 193, which provides:

"If the state bids the land in at sale, the Comptroller shall allow the collector the amount of such publisher's fee to be paid by the Collector to the publisher. * * *,"

is not a valid provision of the law. It has already been shown from an examination of the caption quoted above, that it limits the scope of the bill and authorizes an amendment of said Article 7342 only "with respect to the legal rate of publication so as to conform with Articles 29 and 29a as amended herein." The caption, therefore, will not support the sentence, just quoted, from said Article 7342. We quote from 39 Tex. Jur. p. 103, as follows:

"A title that specifies the particular field an amendment is to cover or states a purpose to make a certain change in the prior law, and that is not merely descriptive of the matters to which the law relates, limits the amendatory act to the making of the change designated and precludes any additional, contrary or different amendment. * * * "

Your sixth question is answered accordingly.

We trust that this will fully answer the questions submitted in your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Harold McCracken

Harold McCracken
Assistant

APPROVED JAN 27, 1942

FIRST ASSISTANT
ATTORNEY GENERAL

BM:ej


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN